UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JO MOSHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | |
| ) | |
| CREDIT CONTROL SERVICES, INC. ) | |
| d/b/a CREDIT COLLECTION SERVICES, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Jo Mosher[1] alleges the following against Credit Control Services, Inc. d/b/a Credit Collections Services ("CCS"):

## INTRODUCTION

1. The beginning of Jo Mosher's stress began when their[2] former auto insurance provider, Infinity Auto Insurance Company ("Infinity"), continued to bill them after the policy was cancelled. Jo disputed that there was any outstanding balance on the account. As a graduate student with no outside source of income, it was clear that Jo could not afford to make payments on a debt that they did not owe in the first place. Over the next few months, Infinity proceeded to send Jo letter upon letter demanding payment. To no avail, Jo attempted to work with Infinity by sending letters to confirm

---

[1] The Plaintiff obtained a name change by court order on February 9, 2016. The attached Exhibits refer to the Plaintiff's previous name, "Joanna Badgett." The Plaintiff's legal name is now "Jonah Eric Mosher." For purposes of this complaint, the Plaintiff will be referred to as "Jo."

[2] Jo identifies as gender fluid. In accordance with Jo's preference, Jo is referred to herein by use of "they/their/them."

the cancellation of the policy, provide proof of new insurance, and clear up any discrepancies regarding the debt allegedly owed.

2. By the time the matter was referred to Defendant CCS for collections, Jo just wanted to be left alone. Feeling hopeless after the failed attempts to deal with Infinity—and in an effort to avoid future stress related to this alleged debt—Jo obtained legal representation shortly after Defendant CCS first contacted them. But even after Jo's attorneys instructed CCS to cease all communications, CCS persisted. CCS continued attempting to collect this disputed debt from Jo, in blatant disregard of its obligations under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction to enforce provisions of the FDCPA, which "may be brought in any appropriate United States district court without regard to the amount in controversy." 15 U.S.C. § 1692k. As the issue arises under federal law, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4. This Court has personal jurisdiction over the Defendant because the action arises from the Defendant's purposeful debt collection attempts in Tuscaloosa, Alabama. For the same reason, this Court is an appropriate venue under 28 U.S.C. § 1391(b)(2).

## PARTIES

5. Plaintiff Jo Mosher is a natural person who resided in Tuscaloosa County, Alabama at the time of CCS's collection efforts.

6. Jo was allegedly obligated to pay a debt to their former personal auto insurance provider, Infinity. Jo is a consumer as defined in 15 U.S.C. § 1692a(3).

7. Defendant CCS is a Delaware corporation with its principal place of business at 2 Wells Avenue, Newton, MA 02459.

8. CCS is a collections agency that represents creditors on a nationwide basis. CCS engages in the business of collecting debts in Alabama, including in this judicial district. CCS is a debt collector under 15 U.S.C. § 1692a.

### FAIR DEBT COLLECTION PRACTICES ACT

9. The FDCPA strictly prohibits a debt collector from communicating with consumers in the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a)(2). This section of the FDCPA further states that if the consumer notifies the debt collector that the consumer desires that the debt collector cease communication with the consumer, further communication from the debt collector shall cease, except to 1) advise the consumer that there will be no further efforts to collect the debt; 2) notify the consumer that the debt collector may elect to invoke specific remedies; or 3) notify the consumer that the debt collector intends to invoke specific remedies. 15 U.S.C. § 1692c(c).

10. Moreover, if the consumer notifies the debt collector in writing that the debt (or any portion of it) is disputed, the FDCPA provides that "the debt collector shall cease collection of the debt" until the debt collector obtains verification of the debt or a copy of a judgment and mails a copy to the consumer. 15 U.S.C. § 1692g.

11. Debt collectors are civilly liable to consumers for such violations of the FDCPA, and may recover up to $1,000 as well as reasonable attorney's fees. 15 U.S.C. § 1692k.

Case 7:16-cv-01614-TMP   Document 1   Filed 09/30/16   Page 4 of 7

**FACTS**

12.  The alleged debt of $278.83 in this case arises out of an insurance contract between Jo and the original creditor, Infinity, for a personal auto policy covering Jo's vehicle in Georgia.

13.  In April 2015, an Infinity customer service consultant advised Jo to cancel the insurance policy with Infinity and find a new provider in Alabama, where Jo was attending graduate school. In May, Jo cancelled the insurance policy with Infinity and provided Infinity with proof of the new auto insurance policy with National General Insurance.

14.  Although Jo cancelled their policy with Infinity in May, Infinity continued to send Jo bills during the months of June, July, and August. During this time, Jo wrote to Infinity to dispute the debt and resolve the issue, but was unsuccessful. Georgia's Office of Insurance and Safety Fire Commissioner also later made an inquiry on Jo's behalf, but Infinity remained adamant about the alleged outstanding balance. Infinity's "final notice" to Jo, dated August 3, 2015, stated that the $278.83 payment was due by August 18, 2015.

15.  In the meantime, Defendant CCS sent Jo a bill, dated August 7, 2015, demanding payment of $278.83.

16.  Feeling hopeless in this fight against the creditor and its collection agency, CCS, Jo sought legal representation shortly thereafter.

17.  In September 2015, Jo's attorneys faxed a letter to CCS, attached as Exhibit A, serving as notice under 1692g of the FDCPA that Jo disputed the validity of the debt that CCS was attempting to collect. Importantly, the letter also informed CCS that Jo was represented by counsel and demanded that any further contact strictly

4

conform to the FDCPA requirements. In particular, the letter demanded that CCS cease communication with Jo about the alleged debt. Jo's attorneys emphasized that any communication needed to be in writing, addressed and sent to counsel, and limited in its purpose. Specifically, the letter demanded that any future communication by CCS be limited to informing Jo's attorneys that CCS had ceased its collection efforts or planned to take specific action in relation to the debt, such as commencing a lawsuit.

18. But even after Jo's attorneys instructed CCS to cease all communications with them, CCS persisted by once again attempting to collect this alleged debt from Jo. Jo received another bill from CCS dated February 12, 2016, which was sent to Jo's home address in Tuscaloosa, Alabama. This bill, attached as Exhibit B, expressly states that it is "communication from a debt collector" and "an attempt to collect a debt."

19. The February bill, self-described by CCS as a "settlement opportunity," was intended to entice Jo to pay at least a portion of the debt. This communication not only flies in the face of Jo's request that CCS stop contacting them but also reflects an effort on CCS's part to circumvent Jo's counsel by contacting Jo directly.

## COUNT ONE: FDCPA VIOLATIONS

20. Plaintiff Jo Mosher incorporates all of the preceding allegations as if fully restated herein.

21. By directly sending Jo a bill "attempt[ing] to collect a debt" in February, Defendant CCS violated 15 U.S.C. § 1692c(c). CCS received notice transmitted via facsimile that Jo was disputing the debt and wished CCS to cease communications with them, except as permitted by the FDCPA. The February bill from CCS neither advised Jo that there would be no further efforts to collect nor notified Jo that CCS could, or in fact

5

intended to, invoke specific remedies such as filing a lawsuit. Thus, the February bill does not fall within any of the three forms of communication authorized once the consumer has directed the debt collector to cease communication under 1692c(c).

22. Even if the February bill was authorized under § 1692c(c), the bill was addressed and sent to Jo personally and thus was still in violation of § 1692c(a)(2). Section 1692c(a)(2) prohibits communication with a represented consumer. As previously alleged, Jo's attorneys faxed a letter to CCS in September 2015—to a fax number specifically provided by CCS on its bills to Jo. This letter notified CCS of Jo's representation. Jo's attorneys specifically demanded that CCS's communication not only be in strict compliance with the FDCPA but also directed to counsel and not Jo. Jo's attorneys even provided a phone number and address where they could be reached.

23. CCS's continued communication with Jo, despite the express invocation of their rights under federal law to *not* be contacted by CCS, underscores the exact type of abusive debt collection practices that the FDCPA was designed to eliminate. *See* 15 U.S.C. § 1692(e).

24. If CCS wanted to recover the debt alleged by Infinity and disputed by Jo, it was free to commence a collection lawsuit. But CCS was not free to continue sending bills to Jo in an effort to collect after they expressed their wishes for CCS to cease communication. This is especially the case where, as here, CCS knew Jo was represented by counsel. Such conduct is expressly prohibited by section 1692c of the FDCPA.

25. As a result of CCS's actions, Jo is due statutory damages under 15 U.S.C. § 1692k.

## DEMAND

Plaintiff Jo Mosher requests that the Court enter judgment in their favor and against Defendant CCS as follows:

A. Enter judgment against the Defendant for its violation of the FDCPA;

B. Award Plaintiff $1,000, the maximum statutory damages available under 15 U.S.C. § 1692k, for CCS's violation of the FDCPA in order to encourage defendants to avoid unfair debt collection practices in the future;

C. Award costs and attorney's fees, available under 15 U.S.C. 1692(k); and

D. Award additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Shelby B. Calambokidis
Shelby B. Calambokidis (Legal Intern)

s/Yuri R. Linetsky
Yuri R. Linetsky (ASB-3088-B20W)

CIVIL LAW CLINIC
THE UNIVERSITY OF ALABAMA SCHOOL OF LAW
Box 870392
Tuscaloosa, Alabama  35487-0392
Telephone:  205.348.4960
Facsimile:  205.348.6851
Email:  ylinetsky@law.ua.edu

Legal Intern and Attorney for Plaintiff Jo Mosher